UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOREEN ANGELUCCI,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No.: 26-cv-0563-BAS-BLM<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITIONER'S PETITION TO QUASH INTERNAL REVENUE SERVICE SUMMONS AND GRANTING UNITED STATES' MOTION TO SUMMARILY DENY PETITION TO QUASH AND ENFORCE IRS SUMMONS**<br><br>**[ECF Nos. 1, 5]** |

This Report and Recommendation is submitted to United States Chief District Court Judge Cynthia Bashant pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1 of the United States District Court for the Southern District of California. On January 28, 2026, Doreen Angelucci ("Petitioner") filed a Petition to Quash Internal Revenue Service ("IRS") Summons ("Pet"). ECF No. 1. On March 6, 2026, the United States ("Respondent") filed a Notice of Motion and Motion to Summarily Deny Petition to Quash and Enforce IRS Summons and a Memorandum of Points and Authorities in Support of Its Motion ("Mot"). ECF Nos. 5, 5-1. On March 20, 2026, Petitioner filed a reply ("Reply"). ECF No. 6. On March 27, 2026, Respondent filed a Supplemental Document to United States' Memorandum of Points and Authorities in Support of Its Motion to Summarily Deny Petition to Quash and Enforce IRS Summons ("Supplement"). ECF No. 7.

1

This Court has considered the petition, motion, reply, supplement, and all supporting documents filed by the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Petitioner's Petition to Quash IRS Summons be **DENIED** and that Respondent's Motion to Summarily Deny the Petition to Quash and Enforce the IRS Summons be **GRANTED**.

## I.   BACKGROUND

Petitioner owes over $7 million in unpaid federal income tax liabilities for tax years 2009 through 2018. Declaration of IRS Revenue Officer Joseph A. Unger in Support of the United States' Motion to Summarily Deny Petition to Quash and to Enforce IRS Summons ("Unger Decl") ¶ 7, ECF No. 5-2. Unger is conducting an investigation to aid in the collection of the outstanding tax liabilities assessed against Petitioner. Id. ¶ 8. His investigation seeks to locate and verify assets to satisfy the federal tax liabilities that have already been assessed against Petitioner for the subject tax years and is not for the purpose of auditing the federal tax liabilities of Petitioner or any other person or entity.  Id. In 2023, Unger mailed to Petitioner multiple Notices of Intent to Levy and Right to Collection Due Process Hearing, and the notices that were not marked unclaimed or undeliverable together covered all the subject tax years. Id.  ¶¶ 9-10. Additionally, in furtherance of his investigation, on April 29, 2025, Unger mailed another Notice of Federal Tax Lien Filing and Right to a CDP Hearing ("2025 Notice") to Petitioner, which was marked unclaimed. Id. ¶ 11.

On January 8, 2026, furthering his investigation, Unger issued a Form 6637 Collection Information Statement Summons ("Summons") directed to Petitioner regarding her federal income tax liabilities for the subject tax years. Id. ¶ 13. On the same day, Unger served an attested copy of the Summons by personally delivering it to Petitioner and during the service, he informed Petitioner "of her duty to comply with the IRS summons and indicated that failure to comply with the IRS summons will result in this summons being referred to the office of IRS chief counsel in order to initiate a summons enforcement proceeding."[1] Id. ¶¶ 14-15.

---

[1] Petitioner's version of the interaction is that during the service, Unger "said to [her] in an intimidating tone, 'you better show up for the examination.'" Doreen Angelucci's Declaration in Support of Her Petition to Quash Internal Revenue Service Summons ("Angelucci Decl") ¶ 4,

26-cv-0563-BAS-BLM

On January 28, 2026, Petitioner filed the instant petition to quash the Summons on two grounds: 1) Unger violated 28 U.S.C. § 6304(a)(2) by personally serving the Summons on Petitioner and speaking to her during the service, which constituted prohibited "communications" because he knew she was represented by counsel; and 2) IRS violated Petitioner's Due Process rights because she did not receive the 2025 Notice. Pet at 2.

In response, on March 6, 2026, Respondent moved to summarily deny the Petition asserting that this Court lacks subject matter jurisdiction over the Petition under 26 U.S.C. §§ 7609(c)(2)(A), 7609(c)(2)(D)(i). Mot at 7.  In addition, Respondent seeks enforcement of the Summons because the United States has established the "[S]ummons' *prima facie* validity" under United States v. Powell[2], and Petitioner fails to overcome the *prima facie* validity.  Id. at 7, 10-23. Moreover, Respondent contends that the facts and statements made by Petitioner in the petition were not made under the penalty of perjury and should be disregarded because "although the [P]etition indicates that [Petitioner] and Mr. Peter Gibbons [her lawyer], submitted declarations in support of their allegations, no such declarations were filed on the docket."[3] On March 27, 2026, Respondent filed a Supplemental Document to United States' Memorandum of Points and Authorities in Support of Its Motion to Summarily Deny Petition to Quash and Enforce IRS Summons ("Supplement"), apologizing for mistakenly alleging Petitioner's and Mr. Gibbons' declarations were not being filed with the Court, and stating that "the United States no longer supports these specific statements, and the assertion that the allegations in those declarations should be disregarded." Supplement at 1-2, ECF No. 7.

On March 20, 2026, Petitioner filed the Reply, arguing that the Summons violates "the procedural element of the Powell test and cannot be enforced" because Unger "directly communicated" with Petitioner "when he served the summons on her," despite "that he knew Attorney [] Gibbons represented [her]." Reply at 2. Additionally, Petitioner contends that the government violated her due process rights because she did not receive the 2025 Notice. Id. at

---

ECF No. 1-2.
[2] 379 U.S. 48 (1964).
[3] Petitioner's and Mr. Gibbons' declarations are on the Docket. See ECF Nos. 1-2, 1-3.

3

26-cv-0563-BAS-BLM

7. Notably, Petitioner does not dispute Respondent's argument that this Court lacks subject matter jurisdiction over the Petition under 26 U.S.C. §§ 7609(c)(2)(A), 7609(c)(2)(D)(i). See id. 2-7.

## II.   Petitioner's Petition to Quash and Respondent's Motion to Summarily Deny the Petition

Respondent moves to summarily deny the petition to quash on the ground that this Court lacks subject matter jurisdiction pursuant to 26 U.S.C. §§ 7609(c)(2)(A) and 7609 (c)(2)(D)(i). In the reply, Petitioner does not dispute the government's argument that the Court lacks subject matter jurisdiction to rule on Petitioner's petition to quash. See Reply 2-7.

### A.  Legal Standard

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" Gunn v. Minton, 568 U.S. 251, 256 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)); see Combs v. United States, 2025 WL 755936, at *1 (S.D. Cal. Mar. 10, 2025). "It is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009); see Combs, 2025 WL 755936, at *1. Significantly, "[a] private party may sue the United States only if the United States has waived sovereign immunity." United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1022 (9th Cir. 2023). If the United States has not waived sovereign immunity, then the court must dismiss the case for lack of subject matter jurisdiction. Id.

"The IRS may issue a summons pursuant to § 7602 for the purpose of 'ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability.'" Action Recycling Inc. v. U.S., 721 F.3d 1142, 1144 (9th Cir. 2013) (quoting 26 U.S.C. § 7602(a)); see Combs, 2025 WL 755936, at *1. The waiver of sovereign immunity permitting challenges to an IRS summons is set forth in 26 U.S.C. § 7609. Mollison v. United States, 568 F.3d 1073, 1075 (9th Cir. 2009); Ponsford v. United States, 771 F.2d 1305, 1309 (9th Cir. 1985); see Combs, 2025

4

WL 755936, at *1; Alizadeh v. CitiBank USA N.A., 2024 WL 1722419, at *1 (E.D. Cal. Apr. 19, 2024), report and recommendation adopted sub nom. Alizadeh v. Citibank USA NA, 2024 WL 3413046 (E.D. Cal. July 15, 2024) ("The only statute that provides federal courts with jurisdiction to quash an IRS summons is 26 U.S.C. § 7609.").

Only a party entitled to notice of a summons is entitled to bring a motion to quash under section 7609(b). See Mollison, 568 F.3d at 1075; Alizadeh, 2024 WL 1722419, at *2; Combs, 2025 WL 755936, at *1; see also Viewtech, Inc. v. U.S., 653 F.3d 1102, 1104 (9th Cir. 2011) (citing 26 U.S.C. § 7609(b)(2)(A)), abrogated on other grounds, Polselli v. Internal Revenue Service, 598 U.S. 432 (2023) ("The issue of who gets notice is highly significant because only a person who is entitled to notice may bring a proceeding to quash such a summons."). Section 7609(c) contains exceptions to the notice requirement, namely the waiver of immunity. See 26 U.S.C. § 7609(c); see also Mollison, 568 F.3d at 1075; Alizadeh, 2024 WL 1722419, at *2; Combs, 2025 WL 755936, at *1.

Under 26 U.S.C. § 7609(c)(2)(A), the notice requirement "shall not apply to any summons [] served on the person with respect to whose liability the summons is issued, or any officer or employee of such person." 26 U.S.C. § 7609(c)(2)(A); see Steeves v. United States, 2024 WL 4361621, at *2 (S.D. Cal. Sept. 30, 2024), aff'd, 2026 WL 184238 (9th Cir. Jan. 23, 2026) (holding that "Plaintiff d[id] not have standing to bring a motion to quash the IRS summons [because] [r]ecipients of summons 'served on the person with respect to whose liability the summons is issued, or any officer or employee of such person,' are exempted from the notice requirement" and that "Plaintiff's arguments regarding the validity of the summons or the underlying tax assessment [were] not relevant to the Court's judgment because they do not bear on Plaintiff's standing to bring his motion to quash").

Under 26 U.S.C. § 7609(c)(2)(D)(i), the notice requirement "shall not apply to any summons issued in aid of the collection of an assessment made or judgment rendered against the person with respect to whose liability the summons is issued." 26 U.S.C. § 7609(c)(2)(D)(i). "The statute sets forth three conditions to exempt the IRS from providing notice." Polselli, 598 U.S. at 438. First, a summons must be issued in aid of collection. Id. Second, a summons must

26-cv-0563-BAS-BLM

aid the collection of an assessment made or judgment rendered. Id. "By 'assessment,' the Code refers to the official recording of a taxpayer's liability." Id. Third, a summons must aid the collection of assessments or judgments "against the person with respect to whose liability the summons is issued.'" Id. (quoting § 7609(c)(2)(D)(i)).

### B. Discussion

In this case, Unger attests that Petitioner has "unpaid assessed federal income tax liabilities" that exceed $7,000,000 for which he has been conducting an "investigation to aid in the collection" of Petitioner's "previously assessed federal tax liabilities for the subject tax years, namely to identify sources of assets." Unger Decl ¶¶ 7, 8, 17. He further attests that the investigation is "not for the purpose of auditing the federal tax liabilities of [Petitioner] or any other person or entity." Id. ¶ 8. "The summons directed [Petitioner] to produce account and financial records of [herself] for the period of January 1, 2025, through the date of compliance with the summons. In addition, the summons directed [Petitioner] to produce documents related to current vehicle registrations, real property, stocks and bonds, accounts stored value cards, online and mobile accounts, virtual currency notes and judgement[sic] receivables, and life insurance policies pertaining to her." Id. ¶ 18. As such, the notice requirement "shall not apply" because the Summons was "served on the person with respect to whose liability the summons [wa]s issued, or any officer or employee of such person." See 26 U.S.C. § 7609(c)(2)(A); Steeves, 2024 WL 4361621, at *2.

Additionally, Petitioner is not entitled to any notice under 26 U.S.C. § 7609(c)(2)(D)(i). First, the Summons was issued to Petitioner in aid of the collection of her assessed federal tax liabilities for tax years 2009 through 2018. See Unger Decl ¶¶ 7, 8, 17; ECF No. 5-2, at 6-14 (Summons). Second, Petitioner's liabilities were assessed well before the Summons was issued on January 8, 2026. See id. ¶¶ 7, 8, 13, 17. Third, the summons only requested Petitioner's own records, "the person with respect to whose liability the summons is issued." See 26 U.S.C. § 7609(c)(2)(D)(i); Unger Decl ¶ 18.

In sum, the statutory exceptions to the notice requirement found in 26 U.S.C. §§ 7609(c)(2)(A) and 7609(c)(2)(D)(i) apply and thus Petitioner is not entitled to notice pursuant

26-cv-0563-BAS-BLM

to § 7609(a), meaning that she is not entitled to bring a motion to quash. See Mollison, 568 F.3d at 1075; Alizadeh, 2024 WL 1722419, at *2; Combs, 2025 WL 755936, at *1.  Because Petitioner has failed to meet her burden to show this Court has subject matter jurisdiction to decide her petition to quash the Summons, the Court recommends that Petitioner's Petition to Quash the IRS Summons be denied and Respondent's Motion to Summarily Deny the Petition to Quash be granted.

**III.    Motion to Enforce the IRS Summons**

Next, the Court turns to Respondent's Motion to Enforce the Summons Issued to Petitioner.   Respondent argues that the Court should enforce the summons because the government has established the "[S]ummons' *prima facie* validity" under Powell and Petitioner fails to overcome the *prima facie* validity.  Mot at 7, 10-23.

**A. Government's *Prima Facie* Case**

The government can make a *prima facie* case for enforcing a summons by demonstrating: (1) the summons was issued for a legitimate purpose; (2) the summoned information may be relevant to that purpose; (3) the information is not already in the IRS's possession; and (4) the IRS has adhered to the administrative procedures for issuing and serving the summons. Powell, 379 U.S. at 57–58. "The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the Powell requirements have been met." Crystal v. United States, 172 F.3d 1141, 1144 (9th Cir. 1999); see Combs, 2025 WL 755936, at *3.

"Once the government establishes the Powell elements, the burden shifts to the party opposing the summons to disprove the actual existence of a valid civil tax determination or collection purpose by the Service .... Without a doubt, this burden is a heavy one." Crystal, 172 F.3d at 1144 (citing United States v. Jose, 131 F.3d 1325, 1328 (9th Cir. 1997) (en banc)). In order to make this required showing, the objecting taxpayer must present specific facts and evidence to support claims of bad faith or improper purpose. Id. The taxpayer may challenge the summons on appropriate grounds, including failure to meet the Powell requirements or abuse of the process.  Id.; see Combs, 2025 WL 755936, at *3.

Here, the government offers the declaration of IRS Revenue Officer Unger to support its

argument that it has established the Summons' *prima facie* validity under Powell. See Crystal, 172 F.3d at 1144. Unger attests that on January 8, 2026, he "issued a Form 6637 collection information statement summons directed to [Petitioner] in relation to her own federal income tax liabilities for the subject tax years." Unger Decl ¶ 13. Unger's declaration addresses all four Powell requirements.

First, Unger attests that the summons was issued for the purpose of "identify[ing] sources of assets" to "aid [] collection of [Petitioner']s previously assessed federal tax liabilities for the subject tax years." Id. ¶ 17. The summons "directed [Petitioner] to produce documents related to current vehicle registrations, real property, stocks and bonds, accounts stored value cards, online and mobile accounts, virtual currency notes and judgement receivables, and life insurance policies pertaining to her." Id. ¶ 18. As such, the government demonstrates that the Summons is issued for a legitimate purpose, meeting the first prong of Powell.

Second, Unger attests that the documents and information summoned "may be relevant to the IRS's collection activities with respect to [Petitioner']s outstanding tax liabilities for the subject tax years." Id. ¶ 19. Specifically, all of the documents and records regarding her "assets, liabilities, or accounts held in her name or for her benefit" are in the "custody, possession, or control of [Petitioner]." Id. Thus, the government demonstrates that the summoned information may be relevant to the legitimate purpose of aiding the collection of Petitioner's outstanding tax liabilities, meeting the second prong of Powell.

Third, Unger declares that "[t]he documents and information sought by the summons are not currently in the possession of the IRS," meeting the third prong of Powell. Id. ¶ 19.

Fourth, Unger attests that he "followed all administrative steps required by the Internal Revenue Code for issuance and service of the summons," meeting the fourth prong of Powell. Id. at ¶ 20.

As such, the government has established a *prima facie* case for enforcing the Summons.

//

//

//

8

**B. Petitioner's "Heavy" Burden to Disprove the Validity of the Summons**

The burden now shifts to Petitioner to present specific facts and evidence to disprove the validity of the summons. <u>Crystal</u>, 172 F.3d at 1144; <u>see</u> <u>Combs</u>, 2025 WL 755936, at *3. The burden is a "heavy" one. <u>Crystal</u>, 172 F.3d at 1144; <u>see</u> <u>Combs</u>, 2025 WL 755936, at *3.

**i.      Unger's Personal Service of the Summons on Petitioner**

Petitioner argues that the Summons is invalid because Unger communicated directly with Petitioner in violation of the fourth prong of the <u>Powell</u> test. Reply at 2-6. Petitioner explains that "[u]nder the fourth prong of the <u>Powell</u> test, the government must show 'the administrative steps required by the Internal Revenue Code for issuance and service have been followed'" and argues that the government cannot meet this burden because Unger "admits that he personally hand delivered the Summons to [Petitioner] at her residence, that he communicated with her when he delivered the Summons, that he knew Mr. Gibbons represented her in connection with alleged unpaid taxes, and that he knew the name and address of Mr. Gibbons, even going so far as to mail Mr. Gibbons a copy of the Summons." <u>Id.</u> at 3-4. Petitioner argues that "Section 6304 of the United States Code interdicts the IRS's communication with a taxpayer 'if the Secretary knows the taxpayer is represented by any person authorized to practice before the Internal Revenue Service with respect to such unpaid tax and has knowledge of, or can readily ascertain, such person's name and address[.]'" <u>Id.</u> (citing 26 U.S.C. § 6304(a)(2)). Similarly, in the Petition, Petitioner complains that Unger "communicated" with her by "issu[ing] and personally serv[ing] the Summons" on her and saying "you better show up for the examination" when he served her the Summons, despite knowing "with certainty that [Petitioner] is a represented taxpayer." Pet at 3-4.

Respondent initially argues that Petitioner's arguments are "unsupported, conclusory allegations and legal conclusions" because "declarations from Petitioner and Gibbons . . . were not filed on the docket." Mot at 17-18.[4] Respondent's second argument is that "26 U.S.C. §

---

[4] As noted above, Respondent filed a supplemental document acknowledging that Petitioner and her counsel filed their declarations and withdrawing this argument. Supplement at 1-2. Accordingly, the Court will not address this argument.

26-cv-0563-BAS-BLM

6304(a)(2) does not prevent the IRS from complying with legal requirement related to the personal service of IRS summonses as set forth in 26 U.S.C. § 7603(a)[5]," which provides that a "summons issued . . .  shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode." Id. at 18. Respondent contends that "the general communication prohibition set forth in relation to taxpayers that are represented before the IRS under 26 U.S.C. § 6304(a)(2) does not prevent the IRS from complying with the personal service requirement set forth in 26 U.S.C. § 7603." Id. at 19. Further, Respondent argues that Unger's personal service of the IRS summons by hand-delivering it to Petitioner and the alleged statement made by Unger during the service of the summons are not actions "in connection with the collection" of tax liabilities for purposes of 26 U.S.C. § 7433, which is the only statute that permits taxpayers to initiate lawsuits for 26 U.S.C. § 6304(a)(2) violations. Id. at 19. Finally, Respondent argues that Unger's declaration establishes that he did not inform Petitioner that "she better show up," but rather informed her "of her duty to comply with the IRS summons and indicated that failure to comply with the IRS summons will result in this summons being referred to the office of IRS chief counsel in order to initiate a summons enforcement proceeding." Id. at 21 n. 2 (citing Unger Decl ¶ 15).

Section 6304(a)(2) states that:

> Without the prior consent of the taxpayer given directly to the Secretary or the express permission of a court of competent jurisdiction, the Secretary may not

---

[5] 26 U.S.C. § 7603(a) provides:

> A summons issued under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty.

26 U.S.C. § 7603(a).

> communicate with a taxpayer in connection with the collection of any unpaid tax [] if the Secretary knows the taxpayer is represented by any person authorized to practice before the Internal Revenue Service with respect to such unpaid tax and has knowledge of, or can readily ascertain, such person's name and address, unless such person fails to respond within a reasonable period of time to a communication from the Secretary or unless such person consents to direct communication with the taxpayer.

26 U.S.C. § 6304(a)(2).

First, Petitioner does not provide any case law or legal authority to support her argument that Unger violated 26 U.S.C. § 6304(a)(2) when he served the Summons on her and talked with her during the service. See Pet; Reply. In contrast, Respondent cites United States v. Derr[6] for the proposition that "the same IRS agent or officer may both issue and serve a summons pursuant to Sections 7602 and 7603." Mot at 19. In Derr, the Ninth Circuit held that the IRS revenue agent "had authority to issue" the summons that he personally served. 968 F.2d at 946-47 (citing 26 U.S.C. §§ 7602, 7603); see United States v. Torrance, 2019 WL 3729814, at *2 (E.D. Cal. Aug. 8, 2019), report and recommendation adopted, 2019 WL 4917610 (E.D. Cal. Oct. 4, 2019) (holding that "sections 7602 and 7603 authorized [the same revenue agent] to issue and serve the summons"); United States v. Cobb, 2008 WL 11353693, at *1, *3 (S.D. Cal. Aug. 19, 2008), aff'd, 458 F. App'x 587 (9th Cir. 2011) (granting "the government's petition to enforce the IRS summons" where the same revenue agent both issued and served the summons). Because Petitioner does not provide any case law to contradict the general rule that a revenue officer can personally serve the summons under 26 U.S.C. § 7603, she has not established that Unger's service of the Summons and minimal communications with Petitioner regarding the service and summons violated 26 U.S.C. § 6304(a)(2).

Second, the only case law Petitioner relied on for her allegation that the issuance and service of summons is communication "in connection with the collection" under 26 U.S.C. § 6304(a)(2) is Miller v. United States, 66 F.3d 220, 222 (9th Cir. 1995), which Petitioner admits interpreted "a different section" of the Internal Revenue Code. See Reply at 6. In Miller, the court analyzed whether the assessment or tax determination part of the process under 26 U.S.C.

---

[6] 968 F.2d 943, 946-47 (9th Cir. 1992).

26-cv-0563-BAS-BLM

§ 6861 (Jeopardy Assessments of Income, Estate, Gift, and Certain Excise Taxes) is "an act of 'collection'" and held it is not. 66 F.3d at 222 (stating, in *dictum*, that "[b]ecause the statutory requirements of 'notice and demand' [part of 26 U.S.C. § 6861] are under § 6303, chapter 64, Collection, 'notice and demand' is a collection procedure"). In contrast, the instant case involves the service of summons (26 U.S.C. § 7603) and enforcement of summons (26 U.S.C. § 7604), which are set forth in Chapter 78 (Discovery of Liability and Enforcement of Title), not Chapter 64 (Collection). Because Miller is not applicable to the statues and conduct at issue in this case, Petitioner's argument fails.

Third, even assuming serving a summons or talking to Petitioner during the service[7] constitute "communication" "in connection with the collection" under 26 U.S.C. § 6304(a)(2), the conduct does not establish a basis to deny enforcement of the Summons. Section § 6304(c) provides that "[f]or civil action for violations of this section, see section 7433." Section 7433 states that "[e]xcept as provided in section 7432[8], such civil action shall be the *exclusive* remedy for recovering damages resulting from such actions." 26 U.S.C. § 7433; see Shwarz v. United States, 234 F.3d 428, 433 (9th Cir. 2000) ("The conference agreement adding the provision makes clear, however, that, except for § 7432 actions, all other actions for improper collection activity are precluded by § 7433. *See* H.R. Conf. Rep. No. 100–1104, at 228–29 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5048, 5288–89 ("[E]xcept as provided by new Code section 7432, an action brought under this provision shall be the exclusive remedy for recovering

---

[7] Although Petitioner alleges that during the service of summons, Unger "said to [her] in an intimidating tone, 'you better show up for the examination,'" Angelucci Decl ¶ 4, Unger's declaration contradicts her version: "During the service of the summons, I informed [Petitioner] of her duty to comply with the IRS summons and indicated that failure to comply with the IRS summons will result in this summons being referred to the office of IRS chief counsel in order to initiate a summons enforcement proceeding." Unger Decl ¶ 15. The Court finds that it does not need to resolve this factual dispute because under either scenario, Plaintiff has not established that the conduct invalidates the Summons.

[8] Section 7432 involves civil damages for failure to release a lien and is inapplicable to this case. See 26 U.S.C. § 7432 ("If any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien . . . on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.").

damages resulting from reckless or intentional disregard of a provision of the Internal Revenue Code, or a regulation promulgated thereunder, by an IRS employee engaged in the collection of any Federal tax.")). Accordingly, even if there was a violation, and Petitioner has not established that there was, the violation could not be remedied by denying the enforcement of an otherwise valid summons. Petitioner has not provided any law contradicting this analysis or supporting her argument.

Finally, although Petitioner bears the heavy burden to disprove the validity of Respondent's Summons, Petitioner has provided no case law or other legal authority supporting her argument that a 26 U.S.C. § 6304(a)(2) violation negates the fourth requirement under Powell that the IRS has adhered to the administrative procedures for issuing and serving the summons. In fact, Petitioner has not provided any reason or cited to any case law establishing that 26 U.S.C. § 6304(a)(2) is part of or relevant to the administrative procedures for issuing and serving the summons.

Accordingly, Petitioner has not carried her "heavy" burden to disprove the validity of the summons based on Unger's personal service of the Summons on Petitioner.

### ii.       Receipt of the 2025 Notice

Petitioner also argues that "[t]he government violated [Petitioner]'s due process rights by failing to take additional steps to ensure she received notice of federal tax lien and her right to a CDP hearing." Reply at 7; Pet at 2, 4. Petitioner states that she "did not receive the 'Notice of Lien Filing and Right to Due Process Collection Hearing' notices purportedly sent on or around April 29, 2025." Angelucci Decl ¶ 5. Petitioner explains that "the Notices report that [Petitioner] received from the I.R.S. reflect the 2025 Notice returned to it as unclaimed," and "[t]he I.R.S. appears to have taken no additional steps to notify [Petitioner] of the 2025 Notice, violating her due process rights." Pet at 4 (citing ECF No. 1-2, at 21-22). Petitioner asserts that "[t]he I.R.S should reissue the Notice and hold a Due Process Collection Hearing before subjecting her to a documents and records examination." Pet at 4. Petitioner contends that the government admits that 1) Petitioner did not receive the 2025 Notice of Federal Tax Lien Filing and Right to a CDP Hearing, and 2) the Summons demands testimony,

documents, and records from January 1, 2025 to the date of compliance with the Summons. Reply at 7. As such, Petitioner alleges that the 2025 Notice "relates directly to the date range contained within the Summons and directly impacts (and violates) her due process rights." Id. The only case law Petitioner cites in support of her position is Jones v. Flowers, 547 U.S. 220, 234 (2006), which she asserts "requires the government to provide taxpayers adequate notice of impending proceedings" and "in the face of the government receiving returned mail as unclaimed or not received, the government must take additional steps to notify the taxpayer – doing nothing in response to receiving such information violates the taxpayer's due process rights." Pet at 4.

Respondent argues that Jones held that "when the mailed notice of *a tax sale* is returned unclaimed, a state, as a matter of due process, must take additional reasonable steps to attempt to provide notice to the property owner before selling the property if it is practical to do so." Mot at 23; 547 U.S. at 225. Respondent explains that Jones does not address whether the IRS can issue a summons prior to providing notice to the taxpayer of their right to request a CDP hearing. Mot at 26. Further, Respondent contends that Petitioner's belief that the IRS is unable to issue summonses when she did not receive the April 29, 2025 Notice prior to the issuance of the summons is incorrect. Id. at 21. Respondent argues that the "primary purpose of [the 2025 Notice] is to inform the taxpayer that the IRS filed a notice of federal tax lien and provides a taxpayer with the ability to request a CDP hearing," and that "the IRS may still issue a summons and/or continue its investigation into a taxpayer's assets even when there is a pending CDP hearing." Id. 21-22.

Additionally, Respondent asserts that the contention that the IRS violated the due process clause of the Fourteenth Amendment because the IRS did not inform Petitioner of her right to a CDP hearing should be rejected. Id. at 22-23. Respondent disputes Petitioner's assertion that the IRS did not take any additional steps to notify Petitioner of her right to seek a CDP hearing as the IRS, on more than one occasion, informed her of her right to a CDP hearing. Id. Respondent contends that on May 18, 2023 and August 10, 2023, Unger mailed to Petitioner Notices of Intent to Levy and Right to CDP Hearing for tax years 2009-2012 and 2013-2018,

14

26-cv-0563-BAS-BLM

respectively, which notices were not marked unclaimed or undeliverable. Id. 22 (citing Unger Decl ¶ 9). As such, after receiving these notices, Petitioner had the opportunity to request a CDP hearing for the subject tax years but failed to do so. Id. Respondent contends that on August 22, 2023, Unger mailed another Notice to Petitioner in relation to her assessed tax liabilities for tax years 2013-2018, which was not marked unclaimed or undeliverable (citing Unger Decl ¶ 10). Id.

In Jones, the United States Supreme Court addressed only "whether, when notice of a tax sale is mailed to the owner and returned undelivered, the government must take additional reasonable steps to provide notice before taking the owner's property." Jones, 547 U.S. at 220, 223 ("Before a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner "notice and opportunity for hearing appropriate to the nature of the case."). The Supreme Court "h[e]ld that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." Id. at 225. Therefore, Jones does not govern the issuance, service, or enforcement of summons. In addition, the Ninth Circuit specifically held that "[t]he taxpayer [] has no liberty or property interest protectable by due process prior to the enforcement of the summons." United States v. Gilleran, 992 F.2d 232, 233-34 (9th Cir. 1993).

Here, the 2025 Notice was sent months before the issuance of the Summons on January 8, 2026, which was prior to the enforcement of the Summons. As such, Petitioner's reliance on the unreceived 2025 Notice to invalidate the Summons is without merit as she has no due process rights prior to the enforcement of the Summons. See Gilleran, 992 F.2d at 233-34.

In addition, the facts presented to this Court do not support Petitioner's argument. Unger attests that "on May 18, 2023, and August 10, 2023, [he] mailed to [Petitioner]'s last known address via certified mail Notices of Intent to Levy and right to Collection Due Process Hearing for tax years 2009-2012 and 2013-2018, respectively. These notices were not marked unclaimed or undeliverable." Unger Decl ¶ 9. He further attests "on August 22, 2023, [he] mailed another Letter 3172 to [Petitioner]'s last known address via certified mail in relation to her assessed tax

15

26-cv-0563-BAS-BLM

liabilities for tax years 2013-2018. . . . The Letter 3172 sent in relation to Angelucci's income tax liabilities for tax years 2013-2018 was not marked unclaimed or undeliverable." Id. ¶ 10. As such, the notices sent by Unger covered all subject tax years (2009-2018) and contradict Petitioner's allegation that "[t]he government violated [her] due process rights by failing to take additional steps to ensure she received notice of federal tax lien and her right to a CDP hearing." See Reply at 7. Petitioner does not allege she did not receive the May 18, 2023, August 10, 2023, and August 22, 2023 correspondence. See Pet, Reply, Angelucci Decl. Accordingly, Petitioner has not carried her "heavy" burden to disprove the validity of the Summons based on her not receiving the 2025 Notice.

In sum, because Respondent establishes a *prima facie* case for enforcing the Summons, and Petitioner has not carried her "heavy" burden to disprove the validity, the Court recommends that Respondent's Motion to Enforce the Summons Issued to Petitioner be granted.

## IV.   CONCLUSION

The Court submits this Report and Recommendation to Chief District Court Judge Cynthia Bashant under 28 U.S.C. § 636(b)(1).

**IT IS HEREBY RECOMMENDED** that Judge Bashant issue an Order: (1) approving and adopting this Report and Recommendation, (2) denying Petitioner's Petition to Quash IRS Summons, and (3) granting Respondent's Motion to Summarily Deny Petition to Quash IRS Summons and to Enforce IRS Summons.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the court and serve a copy on all parties no later than **April 17, 2026**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed with the Court and served on all parties no later than **May 1, 2026**. The document should be captioned "Reply to Objections to Report and Recommendation."

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the court's Order. See Turner v. Duncan, 158

26-cv-0563-BAS-BLM

F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**


Dated:  4/3/2026

Hon. Barbara L. Major
United States Magistrate Judge

17